The next case, number 221483, Joel Douglas et al. versus David Hirshon et al. At this time, Attorney Andrews, please introduce yourself on the record to begin. Judge Helpe, Judge Lynch, Judge Thompson, my name is Robert Andrews. I represent Joel Douglas, Stephen Fowler, and James Lewis, the appellants in this matter. I request three minutes for rebuttal. Okay, go ahead. May it please the Court, the issue in this case is what quantum of information is necessary to well-plead, knowingly join a RICO conspiracy? Let me ask up front. One of the arguments is that the judge was an abuse of discretion for not allowing limited discovery. But on what do you base the right that you're entitled to limited discovery? Because, again, it's the judge's discretion. So the judge has discretion to do that, but it's not unlimited discretion. The judge has an obligation under the procedure to look at whether it's likely that some limited amount of discovery will result in the fulfillment of the missing element. From our perspective, we've met that burden. If we didn't meet the well-plead burden at the beginning. From our perspective, the district court didn't look at Exhibit B of the amended complaint. Exhibit B is the fraud scheme related to 36 Settler Road. And in that Exhibit B is an affidavit from Christina Davis who basically spells out how the fraud was perpetrated. Now, the idea is that that is an instance where the enterprise engaged in one of the predicate crimes of mail fraud or wire fraud or money laundering. Because that spells it out, that Lohsu and David Hershon, the sort of controller of Lohsu, had knowledge of the frauds that had occurred beforehand. Now, there's a distinction here between what was the record in terms of what I've provided in the amended complaint and what I attached to the responsive pleadings. And the issue with discovery is what is known. There's no prohibition like there is in the amended complaint that it be attached. It's simply that the judge has to consider what is known. And so the idea was to present all of the information that could be found about Mr. Hershon and Lohsu's role within the conspiracy. So for me, in thinking about this, so what is it that is included in the entire complaint? Well, there's an introduction. And that introduction sets out basically what the goals of the conspiracy are and the RICO enterprise. And one of those is that a private lender would come along and would take the remaining equity in the homes after the banks had perfected their mortgage interest in these properties. Well, that fits Mr. Hershon and Lohsu to a T. And while it's true in the district court's parsing of what was alleged specifically against Mr. Hershon, it didn't say what was his role in 75 Queen Street or 661 Allen Avenue. But we had made allegations in the amended complaint that had established that role with respect to 36 Settler Road. And based on that, the question is, well, is there a conspiracy? Well, the judge decided that there was a conspiracy. He said that there was a conspiracy that was well-plied with respect to others. So if we're looking at the elements of conspiracy, is there one? Yes. Did he know about it? Well, if you look at the affidavit from Christina Davis, that's Exhibit B, she says they knew about it. Now, maybe that's conclusory, right? And maybe that requires more information. So we make the motion for limited discovery. And from our perspective, limited discovery is broad. It would cover any element. Could you refresh my recollection as to what role Christina Davis played in it? So, you know, 36 Settler Road was one of the fraud schemes that was exercised. She's not a client. But what she did was when those who took the property from her was file an affidavit at the Registry of Deeds explaining that she had been to fraud and that she believed that she had an interest that superseded the bank's interest. This was filed in December of 2020, which is at the end of the period of time when the enterprise was collapsing and withdrawing its money from these properties. Ms. Davis was Mr. LeLumiere's bookkeeper. And she had an agreement with Mr. LeLumiere that she would be purchasing 36 Settler Road and that it was both a rental agreement and an installment agreement. It was a lease in that it allowed her to live there. And it was an installment agreement in that it said the rental payments will go to the final purchase price. And then he had an option that he extended to her several times. And that information was provided in the filing at the Registry of Deeds. When Lo Su and Mr. Hershon raised the issues, we then went back and found all of the instances where Mr. Hershon had been involved with the enterprise. And we saw not only was he involved with 36 Settler Road, we also saw that he was involved with 75 Queen Street. And eventually there were some other victims that are not yet named in this lawsuit who were also involved. And that was Mr. Williams. And so we think we had enough. And we think that some limited discovery would enable us to show whether he knew that the conspiracy existed and whether he knowingly joined it to the extent that his behavior both showed that he intended to join it and that he intended to carry out the goal. Now, he had an important place within the conspiracy. So the issue here is, so Mr. LeLumiere would get control of the property. The banks would then lodge their mortgages. And then the private lenders would then lodge their second mortgages, eating up the remaining equity so that there was nothing left. And then they would foreclose. And because Mr. LeLumiere had placed all of these properties within corporate entities, Maine law allowed him to foreclose with a power of sale. And so that's what the banks did, and then that's what the seconds did. And when that was all over, the folks who thought that they owned their property were left with nothing. And so we're asserting that that could both be in terms of he knew, he could admit, it could also be willful blindness, which would be a sufficient substitute for knowing. And we say that because of the documents that we attach to our response, which demonstrate that he clearly knew about the fraud scheme at 75 Queen Street. He made a filing, which he signed as a witness, which acknowledged that there was a lease and a property interest that was outside. Let me ask you, when you mentioned you attached documents to response, why didn't you below instead ask for a second amended complaint and include those as part of further allegations? So I read the procedure, Your Honor, as, well, Becker said that the judge would have to look at it. And from my perspective, what was necessary for knowingly joined was that you knew about the fraud and that you acted in a way that tried to obtain the goals of the enterprise. And I believe that from my review of the district court cases in Zion and Reyes, or Reyes versus Zion, and OS recovery as compared to Healthy Farms from Massachusetts and Johnson, which I think was an Ohio case. And what you see is that in the banking cases, if Lo Su and Mr. Hirshon are lenders, if they were just providing lending services, then I don't think knowingly joined is met. But I haven't said that. What I've said is they knew about it, and then they engaged in it anyway. And the knowing and engaging anyway. Could you have done some record searches with the land offices to figure out the extent of Lo Su's and Hirshon's involvement? I did, Your Honor. And that's basically the attachments that we see to that response. And getting back to the idea of why I didn't move to amend, well, if I have to move to amend every time the issue is in a case like this where there are numerous entities and numerous defendants, we would be moving to amend an awful lot. But that happens in complex cases. Sometimes it's not unusual to see a fifth or sixth or seventh amendment complaint. Not that it happens in every run of the mill case, but in cases it does happen. And same in criminal cases. Sometimes you have a third, fourth, superseding indictment, and things like that happen. So it's not that the rules don't permit it. The rules don't say you can't amend more than twice, thrice. But because if you're incorporating documents that are not in the complaint, then it becomes a sort of summary judgment when you're looking at matters outside the complaint. Well, so that's not true in the sense that it doesn't necessarily convert it to a summary judgment under the rules. No, the judge has to convert it and inform the parties, I'm going to convert it. Because there's documents outside. But if there's documents outside and the judge is still dealing with a 12B6, the judge can treat it as a 12B6. There's no case law saying you cannot do that. Well, but what he did is instead of considering the public character and the fact that no one was challenging these documents, he just disregarded them. Even though the documents had established, attached to the amended complaint in Exhibit B, that there was, in fact, knowledge of the fraud and that they acted as if they were knowingly joining that fraud. Counsel, you have three minutes for rebuttal, so let's hear then from Mr. Tinkle. Thank you. Please identify yourself before you start. Good afternoon, Your Honors. May it please the Court. I'm Marshall Tinkle. I represent David Hirshon and Losu LLC. I'm not going to beat a dead horse. If the Court has any questions, I'm happy to take them. But I don't think it could be any clearer that the complaint was woefully inadequate. There isn't anything beyond the barest of conclusions to tie Mr. Hirshon with the... You're right. The complaint has a problem. I think the big issue for us is whether the Court abused its discretion in not granting some limited discovery. Right, Your Honor. If you could address that, that would be helpful. The... It's clear, not only from Rule 12b-6, but from the Supreme Court's decisions, from this Court's decisions, that the rule is that if you can't state a claim for which relief can be granted, then the case is over. You're not entitled to take depositions. You're not entitled to serve requests for production of documents. You're not entitled to make motions, pretrial motions. The case is done. It's over. There are two very limited exceptions that the Court has recognized where the Court has discretion, the trial court has discretion, to allow some limited discovery. And those are, as discussed in the Beecher case, if you have a RICO case based on mail-or-wire fraud, and the only thing that's lacking is the particulars of when and how and where the communications took place, you can have discovery on that narrow issue if everything else is copacetic. Menard states that a judge in his discretion can allow modest discovery where most of the complaint states a plausible claim, but there are a few gaps where you don't have all the information you have to say on information and belief. If the Court has a hearing and finds out whether there's anything beyond mere speculation to support the information and belief allegations, the Court may, in its discretion, conduct some allowed discovery on those issues. In this case, the Court gave the plaintiff's attorney ample opportunity to come up with some idea of what these, how his complaint would fit into either the Beecher exception or the Menard exception. He got a chance to do a motion, a reply memo, an objection to the magistrate's decision. He got to argue orally, and the trial court decided there was nothing there, nothing to, in his sound discretion, to say that discovery was warranted. And that was the right decision because, as this Court has pointed out, the reasons why you have heightened pleading standards for RICO and whenever you allege fraud is that you don't want to have plaintiffs make these very vague allegations of fraud and cause an innocent defendant to have to go through some very costly discovery to have his reputation torn apart because you're alleging that now this person is a fraudster. You don't want to have to go through all that if there's nothing there to begin with. You have to be able to go to court in the first instance and be able to at least allege some plausible claim that this defendant was involved in this conspiracy, and that's not here. Anything else, counsel? That's all I have to say. Thank you, Your Honor. Judge Lynch, any questions? No. Thank you very much. You're excused. And, Counsel Andrews, you have three minutes for rebuttal, limited to what counsel briefly addressed. Robert Andrews again for Stephen Fowler, Joe Douglas, and James Lewis. The district court too narrowly read limited discovery and its discretion. The issue in limited discretion, as you can see from the cases, right? Becker sets out a procedure in which the idea that someone has to go to court and know everything, right? Becker says you don't have to. The district court has to do a bifurcated review. It has to decide, did you plausibly plead? And if you didn't, is it sufficient so that you could? So earlier the court was asking questions about amending the complaint. So the question is, is it futile, right? The standard for both, I think, has to be futile. And here it's not futile, right? If we were to consider the attachments, we would see that it's not futile. Okay, but what you're saying is that based on what you have in the attachments, it's the equivalent of having amended the complaint. Have the court look into that. I'm not saying that, right? What I'm saying is because let's – But if you have enough in the attachments, why not further amend the complaint? And I think you said, oh, it's too many amendments. Well, I assumed that that would be the end result of the Becker procedure. Because a judge doesn't simply say, oh, I see your attachments. I understand they could help you. Go ahead and amend the complaint. This is a depleting system, so you have to plead, judge, can I amend the complaint? And this case was almost two and a half years old at that time. Well, the delay, Your Honor, wasn't – the delay was in briefing. The delay was in getting consideration. The delay wasn't for any time extensions on my part or on the defendant's part. This was a case that was brought and that it was briefed expeditiously. And the issue is, right, should the district court have considered the exceptions to those documents? And our position is it clearly should have. That it should have said in that second part of the bifurcated Becker analysis that, well, I see that we have these other documents. They're not really contested. And, by the way, they're recorded documents for the most part. And they're public documents. And that they have a – and no one disputes them. Because no one has disputed any of those public documents and what they say and what they show. And that is, should he have considered them? And we say yes in that decision of, well, I'm going to order a limited discovery, and then I'm going to give you that one last time to do the amended complaint. And if you can produce an amended complaint that isn't futile, then you go forward. I think that's the standard that should have been applied here. Thank you. Okay, thank you very much. Court is adjourned. Thank you all very much. Safe drive to Maine, both of you.